UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL CASE NO.** |
| | : | |
| v. | : | **VIOLATIONS: 18 U.S.C. § 1349** |
| | : | (Conspiracy) |
| **NATWAN E. LOGAN** | : | |
| | : | |
| **Defendant.** | : | |

## INFORMATION

The United States Attorney informs the Court that:

### COUNT ONE:
### CONSPIRACY TO ENGAGE IN BANK FRAUD
### (18 U.S.C. § 1349)

### INTRODUCTION

At all times relevant to this count:

1.  The following banks were financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation: Bank of America, Chevy Chase Bank, SunTrust Bank.

2.  Premier Services was a fictitious company created by law enforcement which existed in name only and was used for the purpose of facilitating a counterfeit check fraud investigation. Premier Services purported to have an account at SunTrust Bank with a large balance that was not regularly monitored. All checks drafted on a Premier Services account were false and fraudulent counterfeit checks in that Premier Services was not an actual business and did not maintain authorized checks.

3.  A coconspirator known but not named in this Information maintained multiple bank accounts at a Las Vegas branch of Bank of America in the name of Dan's Cleaning Service, an organization which operated in and affected interstate commerce.

## THE CONSPIRACY

4.     From between on or about May 5, 2004 until on or about March 12, 2005, in the District of Columbia and elsewhere, defendant NATWAN E. LOGAN "LOGAN" and other coconspirators known and unknown did unlawfully and knowingly combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, namely, Bank Fraud, that is, to knowingly devise and execute, or attempt to execute, a scheme and artifice to defraud financial institutions and to obtain money owned by and under the custody or control of financial institutions by means of false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344.

### The Goal of the Conspiracy

5.     The goal of the conspiracy was for the coconspirators and defendant LOGAN to enrich themselves by fraudulently obtaining monies from financial institutions by means of depositing and presenting for payment false and fraudulent counterfeit checks at various bank branches in the District of Columbia and elsewhere.

### Manner and Means of the Conspiracy

6.     In order to achieve the goal of the conspiracy, coconspirators and defendant LOGAN would and did use the following manner and means, among others: the essence of the scheme involved a coconspirator presenting to defendant LOGAN and other coconspirators counterfeit checks drawn on the account of Premier Services. Believing these checks to be counterfeit and knowing they had no right to any funds from the checks, defendant LOGAN and other coconspirators then would deposit or attempt to deposit the checks into various bank accounts in an effort to cash the checks.

7. It was further part of the scheme that:

    a. a coconspirator in the District of Columbia and Maryland would deposit or attempt to deposit into his own account counterfeit checks made payable to him and drawn on an account of Premier Services.

    b. In an effort to execute this scheme, coconspirators would engage in the following acts:

        i. a coconspirator would obtain checks drawn on a SunTrust account of Premier Services and defendant LOGAN and the coconspirator would deliver the Premier Services checks to another coconspirator with the intent of having the coconspirator deposit and cash the checks;

        ii. a coconspirator would open or maintain bank accounts at Chevy Chase and SunTrust banks with the intent of depositing counterfeit checks into those accounts;

        iii. believing them to be counterfeit checks, a coconspirator would deposit the Premier Services Checks into one of his bank accounts with the intent of cashing the checks;

        iv. once the money from the checks was obtained, defendant LOGAN and coconspirators would split the proceeds from the checks.

8. It was further part of the scheme that :

    a. Defendant LOGAN and coconspirators in the District of Columbia and Las Vegas, Nevada would deposit and attempt to deposit into an account of Dan's Cleaning Service counterfeit checks made payable to Dan's Cleaning Service and draw on an account of Premier Services.

  b. In an effort to execute this scheme, coconspirators would engage in the following acts:

   i. a coconspirator would deliver counterfeit checks drawn on an account of Premier Services to defendant Logan and another coconspirator with the intent of having defendant LOGAN and other coconspirators deposit and cash the checks in Las Vegas, Nevada;

   ii. a coconspirator would maintain a bank account at a Bank of America branch in Las Vegas, Nevada for the purpose of permitting counterfeit checks to be deposited into the account;

   iii. believing them to be counterfeit checks, coconspirators would deposit the Premier Services Checks in Las Vegas, Nevada into a Dan's Cleaning Service bank account with the intent of cashing the checks.

   iv. once the money from the checks was obtained, defendant LOGAN and coconspirators would split the proceeds from the checks.

## Overt Acts

9. Within the District of Columbia, and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, defendant LOGAN and coconspirators committed the following overt acts, among others:

(1) On or about May 5, 2004, defendant LOGAN called a coconspirator about initiating a counterfeit check scheme.

(2) On or about May 13, 2004, defendant LOGAN introduced two coconspirators in an effort to facilitate and discuss the counterfeit check scheme.

(3) On or about June 4, 2004, defendant LOGAN and coconspirators met and deposited

a $1,985 counterfeit Premier Services check at an ATM machine of a Chevy Chase bank branch in the District of Columbia.

(4) On or about June 8, 2004, defendant LOGAN and coconspirators met and traveled to a Chevy Chase bank branch in Washington, D.C. for the purpose of depositing a counterfeit Premier Services check in the amount of $7,495

(5) Between on or about June 24 and on or about June 30, 2004, defendant LOGAN and coconspirators met in the District of Columbia and Maryland for the purpose of depositing into an account of a coconspirator a counterfeit Premier Services check in the amount of $9,480.

(6) On or about June 28 2004, defendant LOGAN and a coconspirator prepared a counterfeit check in the amount of $300,000 which was sent to coconspirators in Las Vegas, Nevada and deposited into a Dan's Cleaning Service account at a Bank of America bank branch in Las Vegas, Nevada.

(7) On or about July 20, 2004, coconspirators met in the District of Columbia and deposited a counterfeit Premier Services check in the amount of $15,000 into a SunTrust bank account of a coconspirator.

(8) On or about November 30, 2004 defendant LOGAN and a coconspirator met in the District of Columbia and made arrangements with another coconspirator to send to Las Vegas, Nevada a counterfeit Premier Services check in the amount of $15,000.

(9) On or about December 1, 2004, a coconspirator in Las Vegas, Nevada received the $15,000 counterfeit Premier Services check and deposited it into a Dan's Cleaning Service account at a Bank of America branch in Las Vegas, Nevada.

(10) On or about December 16, 2004, defendant LOGAN and coconspirators met in

Washington, D.C. to discuss and share proceeds from the $15,000 counterfeit Premier Services check that had been deposited in Las Vegas. During the conversation, a coconspirator advised defendant LOGAN and another coconspirator that there was an employee of Bank of America who was working with them and who required additional payments because of problems with the $300,000 counterfeit check that defendant LOGAN and other coconspirators had attempted to cash.

(11)   On or about March 1, 2005, defendant LOGAN and a coconspirator traveled to Las Vegas, Nevada to meet other coconspirators and to discuss the deposit of a $500,000 counterfeit Premier Services check.

(12)   On or about March 2, 2005, defendant LOGAN and coconspirators met and traveled to a Bank of America branch in Las Vegas, Nevada where a coconspirator attempted to deposit into a Dan's Cleaning Service account a $500,000 counterfeit Premier Services check.

**(Conspiracy, in violation of Title 18, United States Code, Section 1349)**

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
FOR THE DISTRICT OF COLUMBIA


By: _____
G. BRADLEY WEINSHEIMER
Assistant United States Attorney
Bar No. 431796
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-6991