HONORABLE GLADYS KESSLER, UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

NOV 1 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Docket No.: <u>06-CR-241</u> |
| | : | |
| vs. | : | SSN: _____ |
| | : | |
| LOGAN, Natwan E. | : | Disclosure Date: <u>October 12, 2006</u> |

## RECEIPT AND ACKNOWLEDGMENT OF PRESENTENCE INVESTIGATION REPORT

This is to acknowledge that each of the undersigned has received and reviewed the Presentence Investigation Report (PSR) in the above-entitled case. The undersigned further acknowledges that:

### For the Government

(CHECK APPROPRIATE BOX)
    ( )    There are no material/factual inaccuracies therein.
    (X)    There are material/factual inaccuracies in the PSI report as set forth in the attachment herein.

_____        10/26/06
Prosecuting Attorney                                        Date

### For the Defendant

(CHECK APPROPRIATE BOX)
    ( )    There are no material/factual inaccuracies therein.
    ( )    There are material/factual inaccuracies in the PSI report as set forth in the attachment.

_____  _____    _____  _____
Defendant                      Date         Defense Counsel          Date

### NOTICE OF OBLIGATION OF THOSE EXECUTING THIS FORM

Pursuant to Local Rule 32(f)(2), those executing this form shall first submit any material inaccuracies or disputes in writing by <u>October 26, 2006</u>, to U.S. Probation Officer <u>Renee Moses-Gregory</u>, telephone number <u>(202) 565-1348</u>, fax number <u>(202) 273-0242</u>.

Pursuant to Rule 32(b)(6)(B), effective December 1, 1994, it shall be the responsibility of the Attorney for the Government and the Defense Counsel to provide each other with a copy of the objections at the same time the objections are filed with the probation office.

**FOR THE COURT**

By:    Gennine A. Hagar, Acting Chief
        United States Probation Officer

See attached.

Signed by: _____
          (Defendant/Defense Attorney/AUSA)

Date: 10/26/06

The United States notes the following objections to the presentence investigation report prepared for Natwan Logan in case CR-06-241-01:

1. **Page 3, paragraph 3**: This paragraph indicates that the parties agreed that the applicable guideline is §2B1.1(a) and that the total loss was *not more* than $200,000. Instead, this paragraph should read that the parties agreed that the applicable guideline can be found in §2X1.1 and §2B1.1(a) and that applying §2X1.1(b)(2) and §2B1.1(b)(1)(g), the acts completed for a loss of more than $200,000 result in a 12 level increase in the base offense level.

2. **Page 6, paragraph 22**: This paragraph correctly notes the application of §2X1.1 and §2B1.1; however, the government believes that §2X1.1(b)(2) and application note 4 should control the offense level computation in this unique case. Paragraph 22 of the presentence report investigation correctly notes that pursuant to §2X1.1, the base offense level is from the guideline for the substantive offense plus any adjustments. The paragraph further correctly notes that the applicable guideline for the offense in question, 18 U.S.C. 1344, is found in §2B1.1. The government, however, believes that §2X1.1(b)(2) applies as well and must be considered when determining the relevant loss amount in §2B1.1.

Section 2X1.1(b)(2) provides:

> If a conspiracy, decrease by 3 levels unless the defendant or a co-conspirator completed all of the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for the apprehension or interruption by some similar event beyond their control.

Application note 4 to §2X1.1 provides guidance in interpreting this subsection:

> In certain cases, the participants may have completed... all of the acts necessary for the successful completion of part, but not all, of the intended offense. In such cases, the offense level for the count ... is whichever of the following is greater: the offense level for the intended offense minus 3 levels ..., or the offense level for the part of the offense for which the necessary acts were completed .... For example, where the intended offense was the theft of $800,000 but the participants completed ... only the acts necessary to steal $30,000, the offense level is the offense level for the theft of $800,000 minus 3 levels, or the offense level for the theft of $30,000, whichever is greater.

Applying these provisions to this case, the co-conspirators completed all of the acts necessary for successful completion of $331,985 of bank fraud, thus resulting in a loss of more than $200,000 and less than $400,000 and a 12 level increase in the base offense level.[1]

---

[1] When looking only at the loss resulting from the completed acts, there is a two level reduction in specific offense characteristics adjustments (i.e., level 14 when considering the

Significantly, there were six checks in the scheme for which the coconspirators had not completed the steps they believed necessary for completion of the offense. These are checks in the following amounts: (1) $500,000, (2) $65,000, (3) $5,000, (4) $5,000, (5) $9,480, and (6) $7,495, none of which were deposited at any financial institutions. As to the $500,000 check, the coconspirators had determined that they would wire the funds for the check instead of depositing the check itself, following a trip to Las Vegas in which a bank employee apparently advised them to wire the check instead of depositing it. While there was further discussion about wiring the check, relatively few steps were taken to actually wire the money, in part because the FBI would not have allowed the money to be wired and therefore the cooperating witness did little to further this aspect of the scheme. As to the $65,000 and two $5,000 checks, although they were drafted, a coconspirator concluded that no effort should be made to deposit these checks. The coconspirators likewise abandoned plans to attempt to deposit the $9,480 and $7,495 checks (after initial efforts failed).

Section 2X1.1(b)(2) applies to this case because the acts completed by the coconspirators constitute a completed fraud that is part of a larger attempted fraud. See Mancuso v. United States, 42 F.3d 836, 849-850 (4th Cir. 1994) (defendant wrote a large number of fraudulent checks in a complex bank fraud scheme and the court determined that the loss amount should be determined by the number of checks actually used to divert funds); see also, United States v. Downing, 297 F.3d 52, (2d Cir. 2002) (applying §2X1.1(b)(2) because defendants had not completed their intended fraud scheme and rejecting the principle that §2X1.1(b)(2) does not apply whenever the elements of a substantive offense have been completed); United States v. Sung, 51 F.3d 92, 95 97th Cir. 1995) (applying §2X1.1(b)(2) to a case involving a partially completed trademark infringement scheme) (reversed on other grounds followinf remand, 114 F.3d 1192 (7th Cir. 1997)).[2] Support for this interpretation is further found in application note 17 to §2B1.1, which provides:

> In the case of a partially completed offense (e.g. an offense involving a completed theft or *fraud that is part of a larger, attempted theft or fraud*), the offense level is

---

full intended loss of $923,960 and level 12 when considering the completed acts loss of $331,985). Accordingly, this calculation applies rather than the alternate three level reduction described in §2X1.1(b)(2). See §2X1.1(b)(2) (apply the higher offense level when considering a three level reduction or the offense level when utilizing only loss from the completed acts).

[2] The government notes that this is not a case in which the failure to complete all acts intended by the conspirators was due only to interruption by law enforcement. See, e.g., United Sates v. Gallo, 230 F.3d 1355 (4th Cir. 2000) (defendant deposited $58,541 in counterfeit checks and was thwarted from depositing an additional $182,743 only because he was about to be arrested, thus the entire amount was used by the court in calculating the loss amount even though the entire fraud scheme was not completed). In the present case, $586,975 in counterfeit checks never was deposited by conspirators for various reasons having nothing to do with actions of law enforcement or fears of an imminent arrest.

2

to be determined in accordance with the provisions of §2X1.1... whether the conviction is for the substantive offense, the inchoate offense (attempt, solicitation, or conspiracy), or both. See Application note 4 of the Commentary to §2X1.1. (Emphasis added.)

In applying these provisions, it is true that some courts have declined to apply §2X1.1(b) under circumstances in which the defendants completed every act necessary to complete the substantive offense even when every act has not yet been completed to realize the full intended loss amount. See, e.g., United States v. Calvin, 2006 WL 2266903 (7th Cir. August 3, 2006) (and cases cited therein) (declining to apply §2X1.1(b)(1) to convictions for mail and wire fraud); Williams v. United States, 81 F.3d 1321, 1327-1328 (4th Cir. 1996) (declining to apply §2X1.1(b) in a bank fraud case when fraudulent checks had been deposited but proceeds had not been fully withdrawn). In Calvin, for example, defendant used E-bay to fraudulently offer for sale 157 plasma television sets the defendant did not actually possess or intend to sell. Although the defendant only received $13,500 for these fraudulent sales, defendant quoted sales prices to potential customers in the amount of $493,000. The court concluded that §2X1.1(b)(1) did not apply because the elements for mail or wire fraud only require a scheme to defraud and use of the wires or mails, all of which already had been completed. In so doing, the court specifically held that mail and wire fraud are "unique" substantive offenses in that the crimes are complete the instant the mail or wires are used.

In contrast, to complete bank fraud, a defendant must make material false or fraudulent pretenses, representations or promises to a financial institution. While the conspirators had done so in this case for counterfeit checks totaling $331,985[3], they had not done so for checks totaling $586,975[4]. Thus, unlike the defendant in Calvin who had completed the acts of using the mails and wires, the coconspirators in this case had not completed all of the misrepresentations to financial institutions and thus had not completed the larger fraud scheme, even though they certainly had completed smaller frauds within the larger scheme. See, e.g., Mancuso v. United States, 42 F.3d 836, 849-850 (4th Cir. 1994).

Indeed, the applications of §2X1.1(b) by the 4th Circuit Court of Appeals in Mancuso v. United States, 42 F.3d 836, 849-850 (4th Cir. 1994) and Williams v. United States, 81 F.3d 1321, 1327-1328 (4th Cir. 1996) are instructive. In Williams, the defendant deposited $69,000 in

---

[3] This calculation is comprised of individual checks in the following amounts: (1) $300,000, (2) $15,000, (3) $15,000, and (4) $1,985, all of which were deposited at various financial institutions. Thus, whether the coconspirators received proceeds from these checks or not, the coconspirators had completed all acts they believed necessary to complete the offense of bank fraud.

[4] This calculation is comprised of individual checks in the following amounts: (1) $500,000, (2) $65,000, (3) $5,000, (4) $5,000, (5) $9,480, and (6) $7,495, none of which were deposited at any financial institutions.

fraudulent checks but only withdrew $11,000. The court determined that $69,000 was the relevant loss amount and declined to apply §2X1.1(b), holding that the crime was substantially complete when the deposit was made, irrespective of that the defendant had not yet realized the total loss amount (or gain to him) of $69,000. In so doing, the court explained the proper application of §2X1.1(b) in Mancuso:

> [A]s the district court held (in Mancuso), an "intended" loss that the defendant failed fully to inflict may nevertheless be attributable to a "completed" fraud. Mancuso does not hold, as Williams contends, that a loss that is merely "intended" rather than "actual" necessarily is a loss attributable to an uncompleted fraud rather than to a completed fraud. Not only is it clear as a general matter that a fraud can be complete without ultimately inflicting the full, intended loss on the victim-Williams's scheme is a good case in point-but Mancuso is entirely consistent with that general proposition. While that case did involve a smaller, completed fraud within a larger attempted fraud, that was not because there was an intended loss that was much greater than the actual loss. Rather, it was because the district court had found as relevant conduct an uncompleted fraud that was much larger than the smaller fraud of which the Mancusos were specifically convicted. Specifically, the Mancusos had been convicted of diverting to themselves several hundred thousand dollars in professional fees that should have been paid jointly to them and their bank, but the district judge found that they would have continued to divert hundreds of thousands of dollars more up to a total of about $800,000 if they had not been caught first. These further diversions were never completed, although there was ample evidence that the Mancusos had intended to carry them out. Thus the court of appeals, applying the Guidelines to the district judge's factual findings, found a large, uncompleted fraud with an intended loss of about $800,000 *and* within that larger fraud a smaller, completed fraud (comprised of the specific offenses of conviction) with a substantially smaller loss. It was on that basis that the Mancuso court found the cross-reference to the attempt guideline triggered. Mancuso, 42 F.3d at 848-50.

United States v. Williams, 81 F.3d at 1328.

Moreover, were the holdings in Calvin (fraud is completed once the mails or wires used in mail and wire fraud offenses) and Williams (§2X1.1(b) inapplicable when the fraud was complete but intended loss not yet fully realized) applied universally to all fraud cases, no matter the type of fraud and acts actually completed by the coconspirators, §2X1.1(b)(2) and application note 17 to §2B1.1 would be rendered virtually meaningless. United States v. Downing, 297 F.3d 52, 63-64 (2d Cir. 2002) (noting that merely applying an "elements" analysis to determine whether a fraud or conspiracy has been completed would negate almost entirely the utility of §2X1.1(b)(2)). It makes greater sense to apply the logic of Mancuso, viewing certain offenses as smaller frauds within a larger fraud scheme, when looking at cases such as the present one, and this interpretation gives full meaning to note 17 to §2B1.1 and its reference to "partially

4

completed offense (e.g. an offense involving a completed theft or fraud that is part of a larger, attempted theft or fraud).

In the present case, the facts are much more akin to Mancuso than to Williams. Unlike in Williams, defendant Logan's coconspirator had not yet deposited all of the checks that were part of the conspiracy and thus had not yet completed all of the objects of the conspiracy. See United States v. Hord, 6 F.3d 276, 281 (5th Cir. 1993), cert. denied, 511 U.S. 1036 (1994) (noting that it is deposits that constitute the execution of a counterfeit check bank fraud scheme). While substantive offenses had in fact been committed by defendant Logan and his co-conspirators, they are more like the smaller frauds within a larger fraud scheme as described in Mancuso. Accordingly, the government believes that §2X1.1(b)(2) should be applied in this case and that the relevant loss amount should be more than $200,000 but less than $400,000, resulting in a base offense level adjustment of 12, not 14 as calculated in the presentence investigation report.

3. **Page 7, paragraphs 24, 28, and 31**: For the reasons as stated above, the government believes that the specific offense adjustment should be 12 (not 14), resulting in an adjusted offense level of 19 (not 21), and a total offense score of 16 (not 18).

4. **Page 15, paragraph 78**: For the reasons as indicated above, the government does not believe the plea agreement has an impact on the guidelines calculation.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

G. Bradley Weinsheimer
ASSISTANT UNITED STATES ATTORNEY
Bar Number 431796
555 4th Street, N.W., Room 5237
Washington, DC 20530
(202) 514-6991

5